Okay, this is the case of the State of Illinois v. Prince Johnson, 1-16-1666. Before you, you have Justices Cynthia Cabb, myself, Justice Smith, and Justice Aurelia Puchinski. Our sequence of events are as follows. First, the appellant will have their opportunity to present their case, and then we will respond with questions. Then the appellee will have their opportunity to present their case, and that will be our response. And then the finale, and that's it. So with that in mind, you may start. Thank you. Good morning, Your Honors, and may it please the Court. I'm Jennifer Bontrager from the State Appellate Defender for Prince Johnson. There are just two issues in this appeal. First, propensity evidence pervaded this case. Kenyatta Brown's beating and shooting of Albert Stevenson, some hours after Brown shot Ryan Cooper, was not relevant to proving Johnson's identity as the driver of the van in the Cooper shooting. Nothing about his presence at the unrelated Stevenson shooting bolstered any witness's identification of Johnson as the driver in the Cooper shooting. Instead, the overwhelming amount of evidence the jury heard about the Stevenson incident, more than it heard about the Cooper shooting, served as propensity evidence painting Johnson as a scary and violent man deserving of punishment. To be clear, identity was not an issue. Could you just slow down a tiny bit? Of course, I'm so sorry. Identity was not an issue in this case. The question for Johnson's jury was whether he was accountable for Brown's shooting of Cooper, whether they shared an intent or common criminal design. And Johnson's presence at an unrelated crime scene some hours later is irrelevant to that question. Again, these are unrelated crimes. The Cooper shooting was gang related, but the Stevenson beating and shooting was not. No witness testified that that incident had anything to do with gang membership. There was no mention of gang slogans or gang signs or anything. And in fact, witnesses testified that that was about money. So nothing about Johnson's presence at the Stevenson shooting in any way bolsters his identity as the driver of the van in the Cooper shooting. And the evidence of the Stevenson shooting was highly prejudicial. The jury heard more witnesses talk about that incident than it did about the Cooper shooting. Linking Johnson to Brown's shooting of a second individual very likely tipped the scales for the jury. In what was a close case on the legal question of accountability for the Cooper shooting, only Brady Tucker's recanted prior statement linked Johnson to any shared intent or common design to shoot rival gangbangers. Owens, on the other hand, said that there was no discussion about looking for rivals to shoot, and that Brown suddenly whipped out a gun and shot the man that he had started an argument with from inside the van. So allowing the jury to hear significant evidence placing Johnson at the beating and shooting of Stevenson simply cannot be considered harmless. Moving to the second issue, the de facto life sentence of 60 years the judge imposed on Johnson is excessive. 60 years for an accountable party who drove a van while a passenger took out a gun and shot someone he was arguing with does not reflect the minimal nature of Johnson's participation in the shooting, nor the judge acting on the rehabilitative factors. Notably, by the time Johnson was arrested for this offense, four years after it took place, he had already excised himself from gang life and was holding down steady work and providing for his family, demonstrating not only his potential for rehabilitation, but actual ongoing rehabilitation. The judge rejected that evidence and instead said that Johnson should have made better choices. The judge also rejected defense counsel's argument below that Johnson was an emerging adult at the time of the shooting and that at 20 years old, his brain was still developing, making him more reckless and impulsive and thus less culpable than a fully mature adult. The record simply does not show that the judge acted on the rehabilitative factors as the Constitution requires, resulting in an excessive sentence. Do you have questions? Any questions? No questions. All right. Thank you. Brian, you may proceed. Thank you, Your Honor. And may it please the court. Assistant State's Attorney Brian Levitsky on behalf of the people. Counsel indicated a number of reasons why the evidence from the Stevenson shooting would not be relevant. But what it was relevant for was that it showed that the defendant was, in fact, in possession of the murder weapon in a short proximity away and approximate in time to the charged Cooper shooting. It also established that he was accountable for Brown's actions in shooting Cooper. Defendant says that the evidence from the Stevenson shooting merely placed him at that shooting. But in fact, what we heard was that he had possession of the firearm. He handed it to Brown and then he encouraged Brown to commit a shooting. What that shows is that they were accountable for each other's actions that night. And furthermore, again, the defendant was in possession of the murder weapon. And I can't stress that enough. When the jury was asked to determine on a special verdict from whether or not the defendant was in possession of the firearm. And again, while a defendant says that this didn't establish his identity of a shooter. Let's be clear. If this evidence didn't come in, then defendant could have presented maybe two possible defenses. One, he wasn't the person in the car who drove to the shooting, to the Cooper shooting. Or two, if he was, then he had no idea that Brown was going to pull out a gun and shoot him. And that's essentially what I believe Owens testified to at trial, trying to lay one of those defenses. But what we know is, in fact, since defendant had the gun afterwards, he didn't try to distance himself from it. Or he didn't do anything that would be consistent with what someone who was surprised by the actions would do. All established that he was, in fact, the person who was driving the car. And furthermore, that he knew what Brown was intending to do, which is, again, further established by the other evidence, showing that they had this plan to go find people sleeping in the area and that they were looking for members of opposing gangs. Now, on that one point, I just wanted to mention in our brief, I believe on page 22, I did indicate that the Stevenson shooting was also possibly gang related. As defendant correctly points out, there wasn't any evidence in this case showing that the Stevenson shooting was gang related. And so I apologize for that mistake. I would like to also address the idea of a mini trial, which is not what we have in this case. Defendant is correct that the jury heard a lot of evidence regarding the Stevenson shooting, but the court received proffers about what this evidence was going to be before trial through several motions, followed by both the defense and the prosecution and made a decision about what evidence would be and would not be admissible, specifically to avoid the potential of a mini trial. And in fact, excluded the people from offering evidence that it considered potentially cumulative, that evidence from the DNA evidence would be able to tie Brown to the Stevenson shooting. What that shows is that the judge in this case carefully and thoughtfully exercised discretion in admitting this evidence and carefully tailored it. And again, in the motion for a new trial, revisited its earlier ruling and explained that it found that there was no abuse of discretion in that case. I'd like to move on quickly to the sentencing issue, but just before doing so, I would like to reiterate as we explained in our brief that if there was error, then any error was harmless. Of course, this is a jury that was instructed twice during the testimony again before deliberated. And again, both the people and the defense explained that all the Stevenson evidence was only being admitted for the purposes of identity and possession of a firearm. That's what it established. That's what it was relevant for. That's what the jury understood there was being received for. And so there is no danger that it would be improperly received on propensity. Furthermore, there was substantial evidence in this case showing defense guilt, including from the consistent testimony or the consistent statements that were made, either to the grand jury or to the police showing the defendant was part of this plan where they would go around finding people of the rival gang and to shoot them, which is, again, what the evidence of the Cooper shooting established. I think it's appropriate now to move on to the sentencing issue. And I think that what we have here, again, is a judge that really had a lot of evidence, both in terms of aggregation and mitigation, consider that evidence and simply wait it in the way the defendant asked this court to revisit. But that's not what the purpose of a reviewing court is when considering a sentencing issue. I disagree with the defendant that the court rejected the mitigation evidence. I think what the court did was wait it and thought that it was substantially outweighed by all the evidence and aggregation. Also, defendant says that he attempted to present this theory that he was an emerging adult at trial. The word that the words that the counsel used were to the effect that he was no longer simply this teenager who was trying to fit in. That's a prompt of the judge's reaction. He wasn't merely a teenager. He was almost 21 at the time of the offense, which takes him out of, as we know, after people versus Harris, the constitutional protections of Miller. And again, when defendants says that there's no evidence that the judge acted on that mitigation evidence, I think it's important to look at one of the cases of the defense sites for this proposition, Jackson, which explains that the court can't merely consider mitigation evidence, but has to act on it. If you continue on in the paragraph that's cited in the defense brief, citing Jackson, the court then explains that we, of course, presume that the judges, you know, consider an act on the evidence that's before them absent affirmative evidence in the record of the contrary. What we don't have in this case is any evidence that the judge actually refused to consider or refused to act on any of the mitigation evidence, except the sentence the defendant received as a result of all of its consideration, which is not an appropriate way to assess what the child court did in that case. And I have nothing else for my presentation. All right. Regardless of defendant's guilt or lack as to the Stevenson shooting, the evidence here, though, really insinuated the defendant's association with the other crime on that same day. It's hard to imagine that this did not engender prejudice on the jury in light of the excessive amount of evidence presented on Stevenson's shooting. What do you say to that? Well, again, I think that, of course, the jury did hear a lot of evidence regarding the Stevenson shooting. And what's before the court is the judge's decision to admit that evidence after hearing profits of what it would be after rejecting additional evidence regarding the DNA testimony. And then at the motion for a new trial, revisiting its ruling again, indicating that after, you know, with the benefit of hearing all the evidence that came in and considering it alongside of everything else of the jury heard, finding that there was no error. As to, you know, what would happen if you imagine sitting in the jury box and hearing all that evidence coming in? I think that we, again, have to look at what the instructions were given to the jury and how to receive that evidence. The jury heard again after the testimony of Gavada McFarn, again, after the testimony of, I believe it was Detective Stover, about what exactly it was supposed to consider that evidence for. And again, in its final instructions before the jury deliberated, it again gave the 3.16 IPI instruction and instructed the jury not to consider that evidence for any purpose other than the issue it was received on. So I don't think this is a case where the jury had this evidence and, you know, they maybe could have thought about a few different reasons to use it. I think what happened was, you know, the jury had this evidence and there was, you know, admittedly a lot of testimony, but they knew exactly what they were supposed to do with it. If they didn't find that it was persuasive, then, you know, they didn't have any other option to use it for anything. So I don't believe that this is a case where, you know, the jury received a lot of evidence and then an instruction, you know, failed to unring the bell. I think this is a case where the jury received a lot of evidence, but they were told exactly what to do with it. Well, it's unusual to me when a judge has to use curative statements three or four times. It almost means to me he feels he made an error before that. In this case, it appears he directed the jury to irrelevant evidence and irrelevant purposes. There was no value to the, no probative value to the ground and the evidence he directed it to. That being identity, it was irrelevant. So I think there were two questions here. First off, I don't, Your Honor characterized it as a curative instruction. It wasn't a curative instruction. It was a limiting instruction. And when IPI 3.16 is given, courts are encouraged to, at the time that the evidence was received, provide a similar limiting instruction so that the jury knows what to do with the evidence when they receive it. So I don't think that that shows that Judge Patrone thought that there was a mistake. I think that what it shows is, and again, she said that she was going to give that instruction during the, during her ruling on the pretrial motions. So I think what it shows is that she was correctly using her discretion to admit evidence for specific purposes and to ensure that the jury would only consider it for those proper purposes. And again, the evidence was relevant in this case when the question is, you have this defendant who is the driver in essentially a drive-by shooting in enemy gang territory, and he's found moments later blocks further away with the murder weapon in his possession. That shows, A, he possessed the weapon, which again, he was, you know, in the special verdict form specifically charged with, but then also it shows that he isn't someone who simply is unaware of what's going on. He's an innocent bystander. He's merely driving the car. And then Brown has words with Cooper and shoots him for some unrelated purpose. It shows, no, they're working together. He had some knowledge of this. He wasn't doing anything that's consistent with someone who was a mere bystander, like distancing himself, getting help, checking on Cooper, anything like that. No, he's continuing to work with Brown. And that's what shows that he possessed the firearm. And again, that he wasn't merely present in the car, but he was also, you know, an active, knowing participant in the drive-by shooting. Any further questions? Go ahead. Just refresh my recollection. What is the evidence that shows the defendant was in possession of the gun at the Stevenson shooting? What is that evidence? Right. I believe that was, the evidence was that he had the gun and he handed it to Brown before saying, shoot him, shoot him. I believe this came in from the statement to the police. That evidence was largely conflicting, wasn't it? Wasn't the state's own witness Owens? Didn't the state's witness testify that the defendant wasn't in possession of the gun? And in fact, that after the shooting, Brown tossed the gun to Owens as opposed to what the officers testified to? Isn't that evidence largely conflicting? Right. So I think what we have with Owens is a case of, you know, what's sometimes referred to as a witness who flips. So he made a statement to the police. And then, you know, at trial, he, you know, testified differently from the prior state. I'm sorry, he made a testimony to the grand jury. And at trial, he offered just different testimony. And, you know, his testimony is essentially the defendant was an innocent bystander through all of this. And in fact, I believe he also testified that defendant sort of appears, tries separating Stevenson from Brown. You know, essentially, he's the good guy in all of this, which is I think what it just goes to show is that, you know, there was there was conflicting evidence in this case. And what the jury had to decide was, you know, do we trust the testimony of the witnesses on the standard? Do we trust what they had previously said in statements or to the grand jury? In this case, I know the defense in their reply brief noted that we don't have a case that says that prior testimony or statements are going to be more credible. But I think in this case, it was if you look at the sort of consistent narrative that they sort of piece together, which is separate a bit from, you know, the testimony that they get done on the stand, defendants standing at different places or, you know, what he is and isn't involved with and how that even differs from the testimony of his own witnesses regarding him being on a porch nearby. So I think what the jury had was this consistent, you know, prior, consistent internally prior and consistent statements, I should say, which were credible. And that's why they accepted that evidence and rejected the trial testimony, which was different. But Owens had no trouble implicating, and then when he testified about the Cooper shooting, why would he then have trouble implicating defendant on the Stevenson shooting? It doesn't make very much sense to me. If he was willing to throw the defendant under the bus for Cooper, what changed his mind about throwing him under the bus for Stevenson? It's the same trial. So I think that what's a little bit different about this is that, if I recall, Owens testified that he didn't hear about the plan that they had before to go around finding people sleeping. And that sort of says that, okay, maybe defendant isn't in on it. Maybe he is actually just the innocent driver. And then he also testifies that Brown and Cooper had words, which he didn't previously say. So that kind of says that, okay, it wasn't defendant choosing who he's going to stop the car by, it's defendants driving the car and then Brown gets into the separate fight. And so I think what that does is it's an attempt through Owens testimony to show that defendant was an unwitting participant in this case. And so that for that reason, he wouldn't be accountable. Would you agree that identity wasn't an issue in this case? I mean, there was no issue with the defendant's identity as it relates to the Cooper shooting, was there? Well, so I think that one of the reasons that it wasn't an issue is because we had evidence that he's in possession of the firearm, you know, right afterwards. I'm sorry, one of the reasons that it was or it wasn't, I'm sorry. One of the reasons that identity was not an issue in this case was because we know that he's in possession of the firearm shortly after the murder. If he wasn't, then he could have potentially tried to present some defense that he wasn't even in the car. Again, if there was evidence that he was in the car that he couldn't escape, then he could have presented a defense that he didn't know that Brown was going to shoot someone. Would you agree, then, that the only basis for the admission of the out-of-crimes evidence was only on to prove possession? Because you just said identity was not an issue. So that takes away one of the base bases. So the only basis that you could have proceeded on would be possession of the gun. I'm sorry, what I said was that identity was not an issue because the out-of-crimes evidence was admitted. If the out-of-crimes evidence wasn't admitted, then the defendant could have said, I have no idea about this. But he didn't say that. We're not talking about what he could have said. We're at trial. He didn't say that. Maybe another way of trying to make my point about this, to answer your question, is that when we're looking at a ruling on a pretrial motion, the parties are trying to anticipate what the evidence is going to be. They know that we have these witnesses. Who knows whether or not they're going to testify consistently at trial with what they've said before. And we've also got this evidence that shows the defendants in possession of this weapon that we can link through the firearms evidence to the Cooper shooting. That shows he's not going to be able to come up with an alibi testimony and say, hey, that wasn't me in the car. We've got him in the location and in the general time frame of when the Cooper shooting happened. So it's a way of maybe having presumptively limited the sort of theory that the defense would be able to put on, which is again why we're looking at the pretrial ruling a little bit with hindsight. And another thing is that, you know, even if there wasn't a question about identity, it's still the people's burden to establish beyond a reasonable doubt every element of the offense, including the fact that the defendant was the one who committed it. So, you know, there is case law that we cited in our brief that to the effect that, you know, the people can choose to present evidence on an issue that isn't necessarily in question. And I think in this case with the Stevenson shooting evidence did was, you know, it did establish either, you know, defendants identity or further established identity. And again, it also established that he was in possession of a firearm. Either one of those bases, you know, is not propensity evidence, which is I think the bigger point. As long as it's relevant for any purpose other than propensity, then it's admissible. Your position is that these two offenses are similar, even though you admitted here today that one was gang related and the other was not. Correct. I have no further questions. Jennifer, you're up. Thank you, Your Honor. Just one brief point regarding the firearm possession. As Your Honor pointed out, there is no unimpeached evidence placing that gun in Mr. Johnson's hands. And the officer who arrived on the scene of the Stevenson shooting at the end of the shooting specifically testified that he saw Brown attempt to give the weapon to Johnson and Johnson jumped back and away from it and refused to take the gun. Also, case law is very clear that when other crimes evidence is being introduced for the purpose of establishing the identity of a gun, that that evidence must be severely restricted. And that's what this court held in Diaz, in the Diaz case cited in the briefs. I also think it's pretty clear that the claiming that the Stevenson shooting was admitted for identity here. You know, the prosecutor talked about showing that it demonstrated that Johnson was accountable, but for accountability, that's talking about behavior. Identity is an objective fact. It's his presence or lack thereof. Once we take over into starting to talk about behavior, it becomes propensity evidence. If Your Honors have no questions, I'll rest on my briefs. Thank you. Thank you. You both argued very well. It's an interesting case, especially on the issues that we kind of brought up. And this is a very good judge. So I'm, you know, she usually doesn't make any mistakes. So I got to look at this carefully. But thank you very much. And we'll let you know in the next couple of weeks the result.